IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL SMITH et al.,
   *Plaintiffs*,

v.

EXCELON CORPORATION d/b/a
BALTIMORE GAS AND ELECTRIC et
al.,
   *Defendants*.

Civil Action No. ELH-16-1583

**MEMORANDUM OPINION**

In this tort suit, plaintiff Michael Smith[1] has sued Excelon [sic] Corporation, doing business as Baltimore Gas and Electric ("BG&E"), and USIC Locating Services ("USIC"), alleging negligence. ECF 1 (Complaint).[2] In particular, Smith alleges that August 9, 2013, he was engaged in laying pipe underneath the ground, and was injured by an electrical arc flash as a result of defendants' failure to properly mark the presence of underground electrical lines. *Id.* Plaintiff seeks $250,000 in damages. *Id.* at 10.

Defendants have moved for summary judgment under Fed. R. Civ. P. 56, on the grounds that defendants were not negligent; Smith was contributorily negligent; and Smith assumed the risk of injury. ECF 38. The motion for summary judgment is supported by a memorandum of law (ECF 38-1) (collectively, "Motion") and roughly 500 pages of exhibits. Plaintiff opposes the

---

[1] Suit was filed by Mr. Smith and his wife, Kelly. Jurisdiction is based on diversity of citizenship. ECF 1, ¶ 1; *see* 28 U.S.C. § 1332. Count I and Count II are negligence claims against defendants, and pertain only to Mr. Smith. *See* ECF 1, ¶¶ 23-41. Count III set forth a claim for loss of consortium. *See id.* ¶¶ 42-44. That claim has since been voluntarily dismissed. *See* ECF 32. Therefore, Kelly Smith is no longer a party.

[2] Excelon Corporation's correct name is Exelon Corporation. Most of the parties' filings refer to the defendant as Exelon Corporation. The Clerk shall be directed to correct the spelling in the caption.

Motion (ECF 43, "Opposition"), and has attached numerous exhibits.[3]  Defendants replied (ECF 46, "Reply") and submitted additional exhibits.

No hearing is necessary to resolve the motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Factual and Procedural Background

### A.

Smith worked as a pipe layer for Gray & Sons, Inc. ("GSI"). ECF 38-3 (Deposition of Michael Smith) at 2. On the day of Smith's injury, August 9, 2013, he was installing a conduit line approximately two feet underground, outside 1700 Ridgely Street in Baltimore City, a building owned by the nonprofit group Second Chance, Inc. (the "Second Chance Project"). *See* ECF 1, ¶¶ 7, 9, 10; ECF 38-11 (Contract Proposal).[4] Prior to the excavation and installation, GSI entered a ticket with the Maryland Miss Utility "one-call system," requesting that BG&E and Miss Utility mark the location of all underground facilities. ECF 38-18 (USIC Ticket Detail 13438650, dated August 2, 2013).

The Maryland Miss Utility law requires an owner of an underground "facility" to mark the location of the facility, upon request, prior to the excavation of a site. Md. Code (2010 Repl. Vol., 2017 Supp.), § 12-126 of the Public Utilities Article ("P.U."). The statute provides, in relevant part, *id.* § 12-126(b)(1): "An owner-member shall mark the location of its underground

---

[3] Plaintiff's Opposition is not a model of clarity. Portions of the Factual/Procedural History section offer minimal citations to the record, favoring block-quoted deposition excerpts and photographs without context. Plaintiff's many exhibits are all contained collectively in ECF 43-2, rather than being docketed separately, and are differentiated with handwritten stickers on particular pages, making it difficult to locate relevant exhibits.

[4] In the Complaint, ECF 1, ¶ 7, plaintiff asserts the site was located at 1801 Bush Street. The exact address is not material.

facility by marking on the ground within 18 inches on a horizontal plane on either side of the underground facility."

P.U. § 12-101 helpfully defines many relevant terms. An "owner" is "a person that: (i) owns or operates an underground facility; and (ii) has the right to bury an underground facility" and includes "a public utility." P.U. §§ 12-101(j)(1), 12-101(j)(2)(i). An "owner-member" is "an owner that participates as a member in a one-call system." P.U. § 12-101(k).

An "underground facility" is "personal property that is buried" for "transmission or conveyance of electronic, telephonic, or telegraphic communications or electricity" and "includes pipes, sewers, conduits, cables, valves, lines, wires, manholes, attachments, and those portions of poles below ground." P.U. § 12-101(o)(1)-(2). In this case, the "facility" is electrical wiring running through underground pipes.

The Maryland Miss Utility Law defines the "one-call system" as "a communications system in the State that: (1) allows a person to notify owner-members of planned excavation or demolition by: (i) calling a toll-free number or abbreviated dialing code; or (ii) initiating an interactive Internet ticket request; and (2) maintains an underground facilities information exchange system." P.U. § 12-101(i). A public utility must be a member of the one-call system. *Id.* § 12-123(a)(1).

A "ticket" is "a numbered document issued by a one-call system to notify owner-members that: (1) a person intends to perform an excavation or demolition . . . ." P.U. § 12-101(m)(1). An "excavation" is "an operation in which earth, rock, or other material in or on the ground is moved, removed, or otherwise displaced by using any tool, equipment, or explosive" and includes "trenching, digging." P.U. § 12-101(f).

USIC is a utility locating company that contracts with utility companies to locate and mark underground facilities in response to notices of intent to excavate submitted through one-call systems. ECF 38-9 (Deposition of Joseph Feronti) at 2, p.30. BG&E, the owner of the underground facility in this instance, contracted with USIC to mark the facility after the submission of a ticket by GSI. *See* ECF 38-18. It is undisputed that BG&E and USIC marked the ground on August 5, 2013. *See id.*

The Miss Utility law places obligations on those digging in the area of underground facilities, as well. P.U. § 12-127(c) provides:

> (1) A person performing an excavation or demolition shall exercise due care to avoid interference with or damage to an underground facility that an owner-member has marked in accordance with § 12-126 of this subtitle.
> (2) Before using mechanized equipment for excavation or demolition within 18 inches of an underground facility marking, a person shall expose the underground facility to its outermost surfaces by hand or other nondestructive techniques.
> (3) A person may not use mechanized equipment to excavate within 18 inches of the outermost surface of an exposed underground facility.

These provisions effectively establish two overlapping "tolerance zones" that excavators must observe. They may not use mechanized equipment within 18 inches of the above-ground markings made by the facility owner until they have "expose[d] the underground facility to its outermost surfaces by hand." P.U. § 12-127(c)(2). And, once an underground facility is exposed, they may not use mechanized equipment within 18 inches of the exposed facility at any point. P.U. § 12-127(c)(3).

## B.

Smith first arrived at the site of the Second Chance Project on August 5, 2013, along with the project's foreman, Doug Coughlin. ECF 38-4 (Deposition of Doug Coughlin) at 5. Smith and Coughlin scouted the area and identified the utility markings. ECF 38-3 (Deposition of Michael Smith) at 5-6.

By the morning of August 9, 2013, the area marked by USIC had already been partially excavated. *See id.* at 10. According to Smith, the marked utility had been exposed by "test pitting," or digging with hand tools around the electrical facility. *Id.*; *id.* at 4. The identified facility was encased by a concrete "duct bank." *Id.* at 4.[5] Smith measured 18 inches from the side of the duct bank, to determine the point where he believed mechanized equipment could be used. *Id.* at 10. He stood on top of the concrete duct bank to observe while Coughlin operated the mechanized backhoe. *Id.* at 11.

Unfortunately, the excavation bucket of the backhoe, operated by Coughlin, struck a second electrical conduit, which plaintiff maintains was outside the 18 inch tolerance zone and "unidentified."[6] *See* ECF 43 at 3; *see also* ECF 43-2 at 2 (photograph of trench), *id.* at 40 (photograph of string connecting markings, indicating that the damage occurred outside the corridor of markings). This caused an "arc flash," which severely burned Smith, who was standing on the duct bank nearby. *See* ECF 38-3 at 12, p. 244.

The central questions at this juncture are whether the markings were accurately placed, and whether GSI employees heeded them.

## C.

Both Smith and Coughlin maintain that they kept their mechanized equipment at least 18 inches away from the marks placed by USIC. *See* ECF 38-3 at 10; ECF 43-2 at 13 (Deposition of Doug Coughlin). Plaintiff's expert, Thomas M. McCauley, a Professional Engineer (ECF 43-2 at 25), testified that "they were well outside the tolerance zone." *Id.* at 26.

---

[5] I shall refer to this facility as the "duct bank" or the "marked facility."

[6] I shall refer to this facility as the "damaged facility."

Defendants dispute this claim. *See* ECF 38-1 at 26. The afternoon of the incident, USIC began to conduct an investigation of the scene. *See* ECF 38-8 (Deposition of John A. Sullivan, Special Investigator) at 2; ECF 38-35 (USIC Investigation Report). The investigation concluded that GSI had excavated within the 18 inch tolerance zone of the markings. *Id.* at 2. To make this determination, USIC investigators identified two markings on either side of the damaged area that had not been erased in the process of digging, and connected them with a string, thereby extrapolating the approximate location of the other marks. ECF 38-8 at 2.

A photograph from the scene shows that the approximated markings were about 18 inches from the site of the damaged facility. *See* ECF 38-35 at 16[7]:



---

[7] The various photographs submitted by the parties are in color.

In support of defendants' contention that Smith and Coughlin operated the backhoe within 18 inches of the duct bank, they submitted a photograph taken three days after the incident. *See* ECF 38-34:



On the right in the photograph is the damaged electrical facility, with the tape measure resting on top of it. The red mark on the concrete indicates the place where the backhoe struck it. On the left side is the duct bank, on which Smith stood during the excavation. The black lines on the sides of the duct bank were drawn by plaintiff's expert, Thomas M. McCauley, to indicate what he believed were the outer edges of the facility. *See* ECF 38-7 (Deposition of Thomas McCauley) at 5-6. The tape measure, which is not perpendicular to the two facilities, indicates that the spot marked as where the backhoe struck the damaged facility is about 18 inches from the outer edge of the duct bank.

## II. Legal Standard

### A. Summary Judgment

Defendants have moved for summary judgment under Fed. R. Civ. P. 56. Under Rule 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 322-24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable

to the non-moving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits and deposition testimony, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

### B. Choice of Law

A federal court sitting in diversity must apply the law of the forum state in which the court is located, including the forum state's choice-of-law rules, unless a compelling federal interest directs otherwise. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). The forum state is Maryland.

In tort cases, Maryland applies the doctrine of *lex loci delicti*, i.e., the law of the jurisdiction where the alleged wrong occurred. *Lewis v. Waletzky*, 422 Md. 647, 657, 31 A.3d 123, 129 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648 (2007); *Kortobi v. Kass*, 182 Md. App. 424, 443, 957 A.2d 1128, 1139 (2008), *aff'd*, 410 Md. 168, 978 A.2d 247 (2009). As the underlying incident occurred in Maryland (*see* ECF 1, ¶ 1), it is Maryland's substantive law that applies here.

### III. Discussion

In sum, defendants move for summary judgment on three grounds: (1) that they did not breach any duty to Smith because they properly marked the underground electrical facilities (ECF 38-1 at 25-26); (2) Smith is barred from recovery by his own contributory negligence (*id.* at 26-30); and (3) Smith assumed the risk of injury. *Id.* at 30-31. I must deny summary judgment because defendants cannot show their entitlement to judgment as a matter of law on any of these grounds.

### A. Breach of Duty

In Maryland, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013) (quoting *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 131-32, 916 A.2d 257, 270-71 (2007)) (emphasis omitted); *see Schultz v. Bank of Am., N.A.*, 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship

between the breach of duty and the harm suffered, and damages.'") (quoting *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)) (alterations in *Schultz*).

As noted, plaintiff alleges in his Complaint that defendants were negligent in "failing to properly mark the underground electric lines at the location of the incident." ECF 1, ¶¶ 25, 34. Defendants' duty to mark the underground facilities is, as discussed, codified at P.U. § 12-126.

Under Maryland law, when a plaintiff alleges that a defendant's duty is established by statute, "all that a plaintiff must show is: (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of." *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 79, 835 A.2d 616, 621 (2003). Once the statutory violation is shown, "[p]roximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent. It is the existence of this cause and effect relationship that makes the violation of a statute *prima facie* evidence of negligence." *Brown v. Dermer*, 357 Md. 344, 359, 744 A.2d 47, 55 (2000) (internal citations omitted), *overruled in part on other grounds by Brooks*, 378 Md. 70, 835 A.2d 616; *accord Gourdine v. Crews*, 405 Md. 722, 755, 955 A.2d 769, 789 (2008); *Brooks*, 378 Md. at 79, 835 A.2d at 621. If the plaintiff establishes a *prima facie* case, the defendant's negligence becomes a question for the fact finder, which must "evaluate whether the actions taken by the defendant were reasonable under all the circumstances." *Brooks*, 378 Md. at 79, 835 A.2d at 621. *See generally Allen v. Dackman*, 413 Md. 132, 143-44, 991 A.2d 1216, 1222-23 (2010) (discussing standards of liability in negligence actions based on statutory violations); *Rivers v. Hagner Management Corp.*, 182 Md. App. 632, 959 A.2d 110 (2008) (same), *cert. denied*, 407 Md. 276, 964 A.2d 676 (2009).

Defendants maintain that they timely responded to GSI's Miss Utility ticket for the Second Chance Project and marked the underground electric facilities in a manner consistent with industry standards. ECF 38-1 at 25-26. They assert that "USIC placed corridor marks indicating the presence of multiple underground facilities within 18 inches of the damaged facility." *Id.* at 26. Therefore, defendants insist that they "plainly complied with the Maryland Miss Utility law" and Smith "cannot proffer any evidence from which a reasonable juror could find that defendants failed to properly mark" the BG&E electric facilities. *Id.*

I disagree. The parties do not appear to dispute that defendants adequately marked the duct bank on which plaintiff stood. But, the duct bank was not the only facility which defendants were required to mark. As noted, a second electrical facility ran parallel to the duct bank—the one that was ultimately damaged. Even if some of the locator markings were made "within 18 inches of the damaged facility," P.U. § 12-126 provides that an owner-member such as BG&E shall "mark[] on the ground within 18 inches on a horizontal plane *on either side* of the underground facility." (Emphasis added.) Defendants do not claim, and the evidence submitted does not indicate, that the markings were made on both sides of the *second* facility. *See* ECF 38-35 at 16-17; ECF 38-28 at 1. This could support an inference of negligence.

Defendants emphasize that locating an underground facility is "not an exact science." ECF 38-1 at 14; ECF 38-21, Miss Utility Damage Prevention Guide, at 7. But, it appears that the markings placed by USIC did not necessarily comply with P.U. § 12-126. This fact does not demand a finding that defendants were negligent, but, as a result, I cannot conclude as a matter of law that defendants did not breach their duty to plaintiff to mark the electrical facilities properly. Therefore, I shall deny summary judgment on this question.

### B. Assumption of the Risk and Contributory Negligence

### 1.

In Maryland, assumption of the risk and contributory negligence are affirmative defenses that, if proved by the defense, completely bar a plaintiff's recovery. *Crews v. Hollenbach,* 358 Md. 627, 640, 751 A.2d 481, 488 (2000) (assumption of the risk); *Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 690, 69 A.3d 1149, 1155 (2013) (contributory negligence); *Kassama v. Magat*, 136 Md. App. 637, 657 767 A.2d 348, 359 (2001), *aff'd*, 368 Md. 113, 792 A.2d 1102 (2002) (contributory negligence). Assumption of the risk and contributory negligence "are closely related and often overlapping defenses." *Schroyer v. McNeal*, 323 Md. 275, 280, 592 A.2d 1119, 1121 (1991).

"Contributory negligence is the neglect of the duty imposed upon all men to observe ordinary care for their own safety." *Campfield v. Crowther*, 252 Md. 88, 93, 249 A.2d 168, 172 (1969). It is "the doing of, or omitting to do, some act or thing which a reasonably careful person would not have done or omitted to do under the circumstances, and which . . . thereby becomes the . . . proximate cause of the injury." *Miller v. Michalek*, 13 Md. App. 16, 19, 281 A.2d 117, 118 (1971) (citation omitted). "The focus of the contributory negligence defense . . . 'is whether the plaintiff took appropriate precautions to protect his [or her] own interests.'" *Kassama*, 368 Md. at 127, 792 A.2d at 1110 (internal citation omitted).

The doctrine of assumption of the risk "is grounded on the theory that a plaintiff who voluntarily consents, either expressly or impliedly, to exposure to a known risk cannot later sue for damages incurred from exposure to that risk." *Schroyer*, 323 Md. at 280, 592 A.3d at 1121; *see also ADM P'ship v. Martin*, 348 Md. 84, 90-91, 702 A.2d 730, 734 (1997). The requirements for assumption of the risk are well settled. *Poole v. Cookley & Williams*

*Construction, Inc.*, 423 Md. 91, 110-11, 31 A.2d 212, 224 (2011); *ADM P'ship*, 348 Md. at 90-91, 702 A.2d at 734. "[T]o establish the defense of assumption of risk, the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *ADM P'ship*, 348 Md. at 90-91, 702 A.2d at 734.

Assumption of the risk will apply only if "'the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff.'" *Schroyer*, 323 Md. at 283, 592 A.2d at 1123 (quoting *Kasten Constr. Co. v. Evans*, 260 Md. 536, 544, 273 A.2d 90, 94 (1971) (emphasis in *Kasten*)). An objective standard is used to determine whether the plaintiff appreciated and understood the risk and whether the action was voluntary. *Poole*, 423 Md. at 111, 31 A.3d at 224; *Morgan State Univ. v. Walker*, 397 Md. 509, 515 (2007); *ADM P'ship*, 348 Md. at 91, 702 A.2d at 734. However, "'a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him.'" *ADM P'ship*, 348 Md. at 92, 702 A.2d at 734 (citation omitted).

In *Poole*, 423 Md. 91, 31 A.3d 212, the Maryland Court of Appeals noted that "'[t]he same conduct on the part of the plaintiff may . . . amount to both assumption of risk and contributory negligence, and may subject [the plaintiff] to both defenses.'" *Id.* at 112, 31 A.3d at 224 (citation omitted). The court explained that "the traditional basis for distinguishing the two doctrines is that 'assumption of risk is the matter of knowledge of the danger and voluntary acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable person . . . .'" *Id.* (citation omitted).

Unlike contributory negligence, assumption of the risk does not require a finding that the plaintiff was negligent. *Schroyer*, 323 Md. at 282-83, 592 A.2d at 1123. The fact that the plaintiff was aware of the risk, and voluntarily undertook the risk, is sufficient to invoke the

defense. *Id.* at 283, 592 A.2d at 1123. Put another way, when a plaintiff assumes a risk, the plaintiff's voluntary action in showing a "willingness to take a chance" supersedes any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety. *Id.* at 282, 592 A.2d at 1123; *see Prudential Secs. v. e-Net, Inc.*, 140 Md. App. 194, 226-27, 780 A.2d 359, 377-78 (2001).

Of import here, it is ordinarily for the jury to determine whether a plaintiff knew of the danger, appreciated the risk, and acted voluntarily. W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* § 68 at 487; *see also Thomas v. Panco Mgmt. of Maryland, LLC*, 423 Md. 387, 395, 31 A.3d 583, 588 (2011); *Crews*, 358 Md. at 644, 751 A.2d at 490; *Miller v. Michalek*, 13 Md. App. at 23, 281 A.2d at 121. The same is true of the contributory negligence question. "As a general rule, the issue of contributory negligence is a question for the jury '[w]here there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom.'" *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 703, 705 A.2d 1144, 1155 (1998) (quoting *Reiser v. Abramson*, 264 Md. 372, 377-78, 286 A.2d 91, 93 (1972)); *see also Belleson v. Klohr*, 257 Md. 642, 646, 264 A.2d 274, 276 (1970) ("If there is any competent evidence, however slight, leading to support the plaintiff's right to recover, the case should be submitted to the jury."); *Angkuw v. Rosenthal*, No. 185, Sept. Term 2016, 2017 WL 4390428, at *7 (Md. Ct. Spec. App. Oct. 3, 2017).

**2.**

Defendants assert that Smith was contributorily negligent, and assumed the risk of injury, by failing to completely expose the duct bank using hand tools, and by entering the trench during excavation. ECF 38-1 at 26-31. They rely heavily on the contention that Smith and Coughlin

did not properly "test pit the facility" before operating mechanized equipment. *See* ECF 46 at 7-8. According to defendants, Smith did not follow the mandate of P.U. § 12-127(c)(2), which requires that "a person shall expose the underground facility to its outermost surfaces by hand or other nondestructive techniques" before "using mechanized equipment for excavation or demolition within 18 inches of an underground facility marking;" and § 12-127(c)(3), which prohibits use of mechanized equipment within 18 inches of the outermost surface of an exposed underground facility. *See* ECF 38-1 at 28. Additionally, defendants contend that Smith was aware that proper test pitting was required, and had been trained concerning his obligations as an excavator. *Id.*

The evidence in support of these arguments does not support judgment as a matter of law for the defendants. First, it is not clear that P.U. § 12-127(c)(2) applies, because Smith maintains that he and Coughlin *did not* "us[e] mechanized equipment for excavation . . . within 18 inches of an underground facility marking." Coughlin was asked at his deposition, ECF 43-2 at 13: "At any time on August 9th prior to the incident, or at or near the time of the incident, was the bucket of the mini excavator within the 18-inch tolerance zone?" He answered, *id.*, "No."

Defendants call this testimony "self-serving" and asserts, ECF 46 at 10: "No reasonable juror could credit such testimony . . . ." "There is, however, no rule against "self-serving" affidavits." *Harris v. Mayor & City Council of Baltimore*, 429 F. App'x 195, 198 n.5 (4th Cir. 2011). *See also Lee-Thomas v. Prince George's Cty. Pub. Sch.*, DKC-15-2010, 2017 WL 2733802, at *6 (D. Md. June 26, 2017) ("The general rule . . . remains that a court should not weigh the credibility of testimony of one party against the testimony of another at the summary judgment stage, even if it is self-serving."). Further, plaintiff observes that "[t]he only two (2)

eye witnesses to the accident [who gave] testimony was [sic] the Plaintiff, Mr. Smith, and the backhoe operator, Mr. Doug Coughlin." ECF 43 at 4.

Defendants assert that they are nonetheless entitled to summary judgment because Coughlin could not explain how he knew that the backhoe was not used within the 18 inch tolerance zone. ECF 46 at 8; *see* ECF 38-4 at 12-13. However, the inability of a non-party witness to prove a negative during a deposition is insufficient to sustain summary judgment. Rather, it appears that there is a genuine dispute as to whether, where, and how mechanized equipment was used near the marked electrical facility.

Furthermore, Smith averred at his deposition that GSI *had* fully exposed the marked conduit, consistent with P.U. §§ 12-127(c)(2) and (c)(3). The following testimony is relevant, ECF 38-3 at 10:

> Q So you went to the outside edge of the fully exposed conduit and you measured 18 inches to make sure it had been fully pitted –
>
> A Correct.
>
> Q –by hand means?
>
> A Correct.

Coughlin testified that he and Smith "just went down alongside" of the duct bank. ECF 38-4 (Deposition of Doug Coughlin) at 16. He stated that they did not tunnel underneath it "on the bottom, only on the side, and then you see the bottom." *Id.* At least some of the evidence suggests that the adequacy of GSI's test pitting of the marked facility is in dispute.

As to assumption of the risk, defendants assert that Smith "objectively assumed the risk of injury when he entered the trench and stood on a partially exposed BG&E electric facility." ECF 38-1 at 30. They reason that Smith "knew that using mechanized equipment within the no-mechanized zone could result in damage to an underground electric facility, which could cause

personal injury," and that he "unquestionably understood and appreciated the danger of entering the trench while mechanized equipment was being used without having fully test-pitted the trench." *Id.* at 31.

These conclusions are not supported by undisputed evidence. Nor is there any undisputed evidence suggesting that it was inappropriate for Smith to enter the trench while observing the operation of the backhoe.

Given the unresolved questions of where the backhoe was operated, the sufficiency of GSI's test pitting of the marked facility, and the adequacy of defendants' markings, I cannot conclude as a matter of law that Smith either assumed the risk of injury or was contributorily negligent.

### IV. Conclusion

For the reasons stated above, I shall DENY the Motion. An Order follows, consistent with this Memorandum Opinion.


Date: June 7, 2018                                         /s/
                                                          Ellen Lipton Hollander
                                                          United States District Judge